UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 17-11781 |
| TERRY DAVID GADDIS, JR. | SECTION "B" |
| DEBTOR | CHAPTER 7 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ENMON ENTERPRISES, LLC, d/b/a
JANI KING

    PLAINTIFF

| | |
|---|---|
| VERSUS | ADV.P. NO. 17-1065 |

TERRY DAVID GADDIS, JR.

    DEFENDANT

## MEMORANDUM OPINION

This matter came before the court on September 25 and 26, 2018 as a trial on the complaint of Enmon Enterprises, L.L.C., d/b/a Jani King ("Jani King") against the debtor, Terry David Gaddis, Jr., seeking to declare a debt non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). For the reasons set forth below, the court finds that Jani King did prove a breach of contract and fraud with respect to the Pascale's Manale contract. The court also finds that Jani King has not carried its burden of showing that the debtor committed fraud or breached the franchise agreement with respect to the Algiers Charter School Association ("ACSA") contract.

### I.    Background Facts

This case concerns a claim of a franchisor, Jani King, seeking to hold the debtor, the sole member of a limited liability company that was a franchisee, personally liable for a debt that may be owed to the franchisor.[1] Further, Jani King seeks a holding that the debt, if owed, is non-

---

[1] Although not raised by either side at trial, the court's review of the second franchise agreement shows that the debtor signed a guaranty agreeing to be personally bound by the non-compete and non-solicitation agreements.

1

dischargeable. The parties asked in their pre-trial order to bifurcate the trial such that the court would hold a separate trial on the amount, if any, of the debt after a determination of dischargeability has been made. Thus, any debt arising out of the Pascale's Manale contract will be the subject of further proceedings.

Jani King alleges that in 2007 and 2009 it entered into two separate franchise agreements with the debtor.[2] It further alleges that in February 2013, the debtor formed a separate company, First Klass Enterprises, LLC ("First Klass"), and in violation of the non-complete and non-solicitation provisions contained in the franchise agreements, set out to compete against Jani-King through First Klass. In 2014 First Klass bid on and was awarded a cleaning contract with a former client of Jani King, the Algiers Charter School Association ("ACSA"). In early 2015, the debtor was preparing to sell his Jani King franchises to a third party. On February 11, 2015, Jani King terminated the franchise agreements after finding out from the manager of Pascale's Manale restaurant, that the debtor had approached the restaurant's manager about switching the cleaning contract to a new business he was forming. The restaurant had been a client of the debtor through his Jani King franchise. After Jani King terminated the franchise agreement, the debtor filed a demand for arbitration pursuant to the terms of the franchise agreement on July 15, 2015. Before there was a decision in the arbitration proceeding, the debtor filed his Chapter 7 petition.

The debtor's petition for relief under Chapter 7 of the United States Bankruptcy Code was filed on July 11, 2017. The petition listed the debts as primarily business debts, and the debtor

---

[2] The two agreements were for the purchase of two other existing franchises that had been owned by other franchisees, and the contracts appear to be substantially the same, except that they contain references to the customers serviced by the former franchisees at the time of purchase by the debtor. Also, the 2007 agreement was signed by the debtor in his personal capacity, and the 2009 agreement was signed by the debtor as the sole member of Terry Gaddis Jr., LLC. Both contracts contain the same non-compete and non-solicitation language.

listed as one of his assets, a 100% ownership interest in a limited liability company, Terry Gaddis Jr., LLC ("Gaddis, LLC") that had been inactive since 2015. The claim on behalf of Gaddis, LLC against Jani King was listed in his schedules in the amount of $60,000. The debtor also listed an unsecured debt to Enmon Enterprises, LLC in the amount of one million dollars, and marked that the debt was disputed. In his statement of financial affairs, at question 11, which asks for details about your business or connection to any business, the debtor lists Terry Gaddis Jr., LLC and First Klass Enterprises, LLC ("First Klass"). The comments next to First Klass state: "Debtor participated in establishing this LLC in February 2013. However, this LLC has been owned by his mother, Georgina Masters since the formation in 2013."

On October 16, 2017 Jani King filed a complaint initiating this adversary proceeding. The complaint alleged a non-dischargeability action under 11 U.S.C. § 523(a)(2)(A) and alternatively asked for a general denial of discharge under 11 U.S.C. §§ 727(a)(2), (a)(3), and (a)(4)(A). On January 24, 2018, Jani King filed an amended complaint removing the section 727 causes of action, leaving only the § 523(a)(2)(A) action. Jani King did not allege any separate cause of action for breach of contract or anything other than the § 523(a)(2)(A) action. The debtor filed an answer setting forth several affirmative defenses.

II.     **Legal Analysis**

Section 523(a)(2)(A) of the Bankruptcy Code states that a discharge under section 727 of the Code does not discharge an individual debtor from any debt:

> For money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.[3]

---

[3]  11 U.S.C. §§ 523(a)(2)(A).

3

The creditor bears the burden of proving the elements of an exception to discharge by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *Matter of Cowin*, 864 F.3d 344, 349 (5th Cir. 2017), *citing In re Hudson*, 107 F.3d 355, 356 (5th Cir. 1997).

Here, Jani King alleges actual fraud, not false pretenses or a false representation. Until recently, the United States Fifth Circuit Court of Appeal has held that:

Actual fraud, by definition, consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." 3 *Collier on Bankruptcy* ¶ 523.08[5], at 523–57 to 523–58 (footnote omitted). In order to prove nondischargeability under an "actual fraud" theory, the objecting creditor must prove that: "(1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied[17] on such representations; and (5) that the creditor sustained losses as a proximate result of the representations.[4]

The recent case of *Husky International Electronics, Inc.,* __ U.S. __, 136 S.Ct. 1581, 194 L.Ed.2d 655 (2016) changed this by holding that "actual fraud" under § 523(a)(2)(A) does not require a misrepresentation but encompasses other traditional forms of fraud that can be accomplished without a false representation.[5]

The debtor here argues that because Jani King has not shown that he made a false representation upon which Jani King relied in entering into the franchise agreement, Jani King's claim fails. If this case had been brought pre- *Husky Int'l Electronics,* the court would likely agree.[6]

---

[4] *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995).
[5] *In re Ritz,* 567 B.R. 715, 722 (Bankr.S.D.Tex. 2017).
[6] *See, In re Caletri,* 517 B.R. 655 (Bankr.E.D.La. 2014); *In re Khafaga*, 419 B.R. 539 (Bankr.E.D.N.Y. 2009).

4

Jani King, however, argues that in light of the Supreme Court's ruling in *Husky Int'l Electronics*, the court must look to whether actual fraud was committed, even if no false representation was made. Jani King also cites to *In re Morris,* 2018 WL 2165767 (Bankr.M.D.Fla.) and *In re Sullivan,* 315 B.R. 809 (Bankr.W.D.Mich. 2004) in support of its argument that the debtor's actions make any debt owed to Jani King non-dischargeable.

Although the amended complaint filed by Jani King only alleges a cause of action under § 523(a)(2)(A), and does not specifically state causes of action for breach of contract or any other state law causes of action, the court summarizes the arguments made by Jani King as follows: Jani King argues that while the debtor still owned and actively operated two Jani King franchises, the debtor secretly created First Klass in February 2013 and operated the company specifically to compete with Jani King, and through First Klass, violated the non-compete and non-solicitation agreements in the contract between the debtor and Jani King. Jani King further argues that the debtor concealed the existence of First Klass, and that concealment along with the actions taken by First Klass to procure cleaning contracts constitute fraud such that any damages Jani King may be entitled to under its contract with the debtor are non-dischargeable under § 523(a)(2)(A) of the Bankruptcy Code.

The debtor counters that First Klass was his mother, Ms. Georgina Masters' company, and that he had helped her set the company up, which is why his signature is on the formation documents. He also stated that he helped her pay some bills for the business from time to time. He denies that he was involved in operating First Klass or was an owner of First Klass prior to the time his Jani King franchises were terminated on February 11, 2015.

As a general proposition, Jani King argues that the testimony of the debtor and his mother, Ms. Georgina Masters, is not credible and relies heavily on that argument to show fraud.

The court agrees that the debtor was inconsistent at times in his testimony, and thus does not give great weight to his testimony, but the court does not find that the debtor was lying. The court found the debtor's mother, Ms. Masters, and the other witnesses who testified at trial to be credible witnesses.

### A. The Pascale's Manale restaurant contract

Jani King alleges that the debtor approached the manager of Pascale's Manale restaurant in February 2015 asking him to transfer the Jani King cleaning contract to a new business that the debtor was starting up. The debtor does not seriously contest this claim, but rather argues that because he was not successful, Jani King was not damaged. In this situation, the debtor's actions do appear to be a breach of the franchise agreement with Jani King. This situation is similar to the fact patterns in the cases upon which Jani King relies to argue that the debtor committed fraud. It seems likely to the court that as the debtor was poised to sell his Jani King franchise, he may have been contemplating a violation of the non-solicitation agreement. It also seems likely that given the close relationship between the debtor and his mother Ms. Masters, he was preparing to begin working with her at First Klass once his Jani King franchise was sold. In fact, this is what he ended up doing for a time once Jani King terminated his contract.

The cases cited by Jani King are similar to the debtor's situation *vis a vis* the Pascale's Manale restaurant contract in several respects. *In re Sullivan*, 305 B.R. 809 (Bankr. W.D.Mich. 2004) concerns a debtor who was the president of the plaintiff company. The plaintiff's business was starting to fail, and the debtor began looking around for other employment. He met with a new client on behalf of his employer, but at the meeting where he was pitching the company's services, he also inquired about employment for himself. The debtor later informed the client that he wouldn't feel comfortable working with the client because of his employer's

circumstances (the failing business). The debtor then started a new company and contacted the prospective client on behalf of his new company. He also submitted a proposal for conducting an analysis for the client, which resulted in a contract for his new company. The debtor resigned from his employer in the midst of all this. The analysis performed by the debtor's new company resulted in a new contract that was worth approximately $400,000 to the debtor's new company. The former employer sought a judgment against the debtor under § 523(a)(2), (a)(4), and (a)(6).

The *Sullivan* court found the debtor liable primarily because of his fiduciary duties as president of his former employer but limited the damages to the $15,930 that the debtor received for performing the initial analysis. The court declined to award the $400,000 from the second contract the debtor entered into because it found that even if the former employer had prepared the analysis, there was no guarantee the client would have retained anyone to perform the extra work, let alone the former employer. The court found the debt was non-dischargeable under § 523(a)(2), (a)(4), and (a)(6). The court found that actual fraud was committed even though the plaintiff could not show the traditional fraud elements were met, stating: "The Debtor's conduct in this case is sufficiently egregious to fall within the reasoning of the 'actual fraud' decisions. His theft of a corporate opportunity by nondisclosure, and his subsequent (partially unsuccessful) attempt to cover up the evidence thereof, is compounded by his overall lack of veracity at trial."[7]

The other case Jani King relies on is *In re Morris,* 2018 WL 2165767 (Bankr. M.D. Fla.). This case concerned the employee of a flooring company who had his own design services business on the side; these services were different than the services the employer provided. The debtor had also signed a covenant not to compete against his employer. An ongoing customer of his employer wished to order tile that his employer did not carry and could not order at the time

---

[7] *In re Sullivan* at 824.

because the seller of the tile would only sell to companies with a specific type of certification. He and another employee, who also had a side business that did have the certification, ordered the tile through the other employee's business, using the debtor's company's bank account to receive and pay out the funds associated with the transaction. The two employees did not tell their employer that they had done so. The court found the debtor liable to the employer for the amount of the profits he had received from the transaction and found that debt was non-dischargeable under § 523(a)(2) and (a)(4).

The court finds that the debtor's behavior with respect to the Pascale's Manale contract is a breach of the non-solicitation provision of the franchise agreement. The facts here are similar enough to the facts of *Sullivan* and *Morris*, that the court finds fraud. But, under *Sullivan* and *Morris*, the damages would be the debtor's profit on usurping this business from Jani King. Because the debtor was unsuccessful in his attempt to lure this account to his new business enterprise, he did not make any profit. Thus, the court finds that there are likely not any damages or debt that would be non-dischargeable. Because the parties chose to bifurcate the trial and only address the question of damages if non-dischargeability was found, however, Jani King may want the chance to try to prove damages for solicitation of the Pascale's Manale contract. The court will hold a status conference with the parties to determine whether that is needed.

B. The Algiers Charter School Association ("ASCA") contract

As the party seeking a judgment that a debt is non-dischargeable, Jani King bears the burden of proving its case by a preponderance of the evidence. The court finds that other than the Pascale's Manale contract Jani King did not carry this burden. Although Jani King points to some actions by the debtor that alone could support Jani King's theory, the evidence taken as a whole does not show that Jani King bore its burden. The court sets forth below several key

points that create problems with Jani King's theory that the debtor was secretly operating First Klass from its inception in 2013.

Tracy Mercadel was deposed as a representative of ACSA in connection with this litigation as a third-party witness.[8] Because Mr. Mercadel has no dog in this fight, so to speak, the court finds that his deposition testimony is very credible. Beginning in 2010, Jani King had a cleaning services contract with ACSA.[9] Sometime in 2014 this contract was terminated. Mr. Mercadel testified that the reason ACSA terminated its contact with Jani King was because of problems with another Jani King franchisee who was not a part of this dispute. The problems experienced by ACSA appear to have pre-dated the disputes between the parties in this case. Because of these problems, ACSA decided not to renew the Jani King contract, but instead put the cleaning contract for its schools out for public bid. The scoring for that bid, which involved each of six schools submitting a score for each bid, resulted in the Jani King bid coming in sixth of thirteen bids. The bid was awarded to First Klass, which began work on July 28, 2014. Jani King contends this lost bid is the main part of the basis for its damages against the debtor.[10]

Mr. Mercadel testified that to his knowledge, the debtor had only been working with First Klass "in the last year" to oversee the ACSA contract; thus, according to this major client of First Klass, the debtor's involvement with First Klass began sometime in 2015, which would have been after Jani King terminated the debtor's franchises.[11] Mercadel testified that First Klass had an operations manager named David Hudson prior to the time that the debtor began working

---

[8] At the time of the deposition, which is dated November 21, 2016, Mercadel was the executive director of site services for ACSA.
[9] The contract was for three years with two one-year options to renew the contract.
[10] The complaint asks for up to $1,243,000 in damages, and the majority of this is attributable to the loss of the ACSA contract.
[11] Counsel for Jani King asked about the date of the debtor's involvement several times, and Mercadel was consistent in his testimony that the debtor was not involved in First Klass until sometime in 2015. *See* Deposition of Tracy Mercadel dated 11/21/16 at pp. 38, 42, and 45.

with ACSA in 2015,[12] that Ms. Masters, on behalf of First Klass emailed a staffing list to ACSA on November 17, 2014,[13] that he knew the debtor before the bidding process began,[14] that Ms. Masters attended the interview during the ACSA bidding process, not with the debtor but with two other men he did not know,[15] and that the Jani King contract was not renewed for an extension, rather than terminated by ACSA.[16]

Other evidence introduced at trial that the court found that cast doubt on Jani King's theory of the case were the bid proposal for the ACSA job dated May 29, 2014, and signed by Ms. Masters.[17] Another page of this same bid lists the principals of the company as follows: President, Steve Rogers; Vice-President, Georgina G. Masters; Secretary, Meghan Bias; and Treasurer, Georgina G. Masters.[18] The contract between ACSA and First Klass dated July 30, 2014 was signed by Ms. Masters as Vice-President of First Klass. Also introduced at trial were the 2013 through 2016 tax returns of Ms. Masters which listed First Klass on her Schedule E and were filed with the IRS.[19]

There was no conclusive evidence that the debtor, through First Klass, appropriated the ACSA contact from Jani King. Mr. Mercadel was very clear in his deposition that the contact was put out for re-bid because of the problems ACSA had with the Jani King franchisee who was servicing the ACSA contract. He stated that these problems had been ongoing for some time. He was equally clear that the debtor, whom he knew, was not at the bid meeting; rather the debtor's mother and two other men whom he did not know were there to represent First Klass.

---

[12] Mercadel Deposition p. 46.
[13] *Id* at p.59.
[14] *Id,*
[15] *Id* at 93.
[16] *Id* at p. 100.
[17] Trial Exhibit 13.20.
[18] Trial Exhibit 13.140.
[19] Trail Exhibit 34.

Finally, Mr. Mercadel testified, and Trial Exhibit 15 shows, that the bid selection was made by the six different schools in the ACSA scoring the thirteen different bidders, and that the bid was awarded based on total score; Jani King's bid was in sixth place in this process, so even had First Klass not participated in the bidding process, Jani King would not have won the contract – the second place bid would have prevailed. Although the debtor signed the formation documents, the debtor was not a signatory on the ACSA contract, nor was he listed as a principal of the company on the ACSA bid. His mother's tax returns claimed First Klass revenues as her income. Finally, John O'Neil, the executive vice-president of Jani King, testified that he did not know of any customers, other than Pascale's Manale, that the debtor had solicited as on February 11, 2015.

Although there certainly was some evidence to support Jani King's argument, the preponderance of the evidence was not probative that the debtor was running First Klass and competing with Jani King in 2013-2014. The court finds that Jani King failed to carry its burden with respect to this part of its claim against the debtor.

**Conclusion**

For the foregoing reasons, the court finds that Jani King prevails only in showing that the debtor committed fraud with respect to his attempted procurement of the Pascale's Manale contract. An order scheduling a status conference to determine how to handle the question of damages will be entered. Once the damages have been determined, the court will enter a final order in this matter.

New Orleans, Louisiana, April 10, 2019.

Jerry A. Brown
U.S. Bankruptcy Judge